IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DEBRA HARTZO, et al.,

        Plaintiffs,

v.                                                                  Civil Action No. 2:13-cv-10326

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(*Defendant's Motion for Summary Judgment*)

Pending before the court are defendant C. R. Bard's ("Bard") Motion for Partial Summary Judgment [ECF No. 53] and Bard's Motion for Partial Summary Judgment on Punitive Damages [ECF No. 55]. As set forth below, Bard's Motion for Partial Summary Judgment [ECF No. 53] is **GRANTED** as it pertains to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, negligence, and failure to warn. Additionally, Bard's Motion for Partial Summary Judgment on Punitive Damages [ECF No. 55] is **GRANTED**.

I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 8,000 of

which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:12-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Hartzo's case was selected as a Wave 2 case by the plaintiffs. PTO # 118, No. 2:12-md-2187 [ECF No. 841].

Ms. Hartzo was surgically implanted with the Align TO Urethral Support System (the "Align") by Dr. James Robertson at WK Bossier Health Center in Bossier City, Louisiana. Am. Short Form Compl. ¶¶ 9–13 [ECF No. 27]. As a result of complications allegedly caused by the Align, the plaintiffs bring the following claims against Bard: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; loss of consortium; and punitive damages. *Id.* at ¶ 14. Bard moves for partial summary judgment on the grounds that the plaintiffs' claims are either without evidentiary support or not cognizable under Louisiana law. Mem. Supp. Mot. Summ. J. 1 [ECF No. 54].

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105

F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Hartzo did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va.

Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Hartzo received the implantation surgery for the Align in Louisiana. Thus, the choice-of-law principles of Louisiana guide this court's choice-of-law analysis.

The parties agree that these principles compel application of Louisiana law. Under Louisiana law, a tort claim "is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied" to the claim. La. Civ. Code Ann. art. 3542 (listing factors such as place of injury, residence of parties, and nature of relationship between parties to determine the appropriate state law). The plaintiffs are residents of Louisiana, Ms. Hartzo was implanted with the product at issue in Louisiana, and her alleged injuries and follow-up care occurred in Louisiana. Accordingly, I will apply Louisiana's substantive law to the claims in this case.

### III. Analysis

#### A. Claims Not Cognizable Under the LPLA

Under the Louisiana Products Liability Act ("LPLA"), "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous." La. Stat. Ann. § 9:2800.54.

A product is "unreasonably dangerous" under the LPLA if:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

5

> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer . . . .

*Id.*

The LPLA provides the "exclusive theories of liability for manufacturers for damage caused by their products." *Grenier v. Med. Eng. Corp.*, 99 F. Supp. 2d 759, 761 (W.D. La. 2000); *see also Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997) ("While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer."). Accordingly, the plaintiffs' claim of negligence, Master Compl. ¶¶ 62–67, No. 2:10-md-2187 [ECF No. 199], cannot be maintained under the LPLA. *Id.*; *see also Automatique New Orleans, Inc. v. U–Select–It, Inc.*, No. 94-3179, 1995 WL 491151, at *3 n.2 (E.D. La. Aug. 15, 1995). The plaintiffs' claim for breach of implied warranty is similarly barred by the exclusive nature of the LPLA. *Grenier*, 99 F. Supp. 2d at 763 (finding that breach of implied warranty claims are not cognizable under the LPLA). Furthermore, the LPLA does not authorize punitive damages. *See* La. Rev. Stat. Ann. §9:2800.53(5) (limiting recovery to

compensatory damages); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770 (W.D. La. 2007) ("[T]he LPLA does not authorize the recovery of punitive damages.").[1]

Accordingly, Bard's Motion for Summary Judgment [ECF No. 53] is **GRANTED** as to the plaintiff's negligence and breach of implied warranty claims. Additionally, Bard's Motion for Partial Summary Judgment on Punitive Damages [ECF No. 55] is **GRANTED**.

## B. Remaining Claims

Bard argues that it is entitled to summary judgment because the plaintiffs lack evidentiary support on the following claims: strict liability manufacturing defect, breach of express warranty, and strict liability failure to warn. The plaintiffs have agreed not to pursue claims for manufacturing defect and breach of express warranty. Resp. 11–12 [ECF No. 112]. Bard's Motion, therefore, on the plaintiffs' claims for manufacturing defect, under theories of strict liability and negligence, breach of express warranty, and breach of implied warranty is **GRANTED.** The only disputed claim concerns the plaintiffs' strict liability failure to warn claim.

Section 2800.57 of the LPLA sets forth when a product is unreasonably dangerous because of an inadequate warning. In relevant part, the section provides:

> A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if . . . the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
>
> . . .

---

[1] The plaintiffs do not contest that the LPLA does not permit punitive damages. Pls.' Resp. [ECF No. 111].

> C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. Stat. Ann. § 9:2800.57.

Additionally, with regard to failure to warn claims involving medical devices, Louisiana follows the learned intermediary doctrine. *See Theriot v. Danek Medical, Inc.,* 168 F.3d 253, 256 (5th Cir. 1999). "Under this doctrine, the manufacturer has no duty to warn the patient, but need only warn the patients physician." *Willet v. Baxter Intern., Inc.,* 929 F.2d 1094, 1098. (5th Cir. 1991). In order for a plaintiff to recover for a failure to warn claim under the learned intermediary doctrine, the plaintiff must show: "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Id.* ("[T]he plaintiff must show . . . that but for the inadequate warning, the treating physician would not have used or prescribed the product."). Accordingly, the plaintiffs here must demonstrate that but for Bard's allegedly inadequate warning, that Dr. Robertson or Dr. Blanton would not have used, or at least would not have recommended using, the Align in treating Ms. Hartzo.

According to Bard, the plaintiffs have no evidence that a different warning or additional warnings would have changed Ms. Hartzo's treating physician's decision, and, therefore, the plaintiffs cannot establish causation. Bard points to Dr.

8

Robertson's and Dr. Blanton's deposition testimony as proof that no additional warnings that should have been given would have changed their decision to utilize the Align on Ms. Hartzo. In response, the plaintiffs argue that Bard cannot hide behind the learned intermediary doctrine because it has not demonstrated that its warning to physicians was adequate. According to the plaintiffs, Bard knew that Align mesh contracted, roped, curled, and otherwise deformed, but had never provided that warning to doctors. Further, the plaintiffs argue that had Bard informed the doctors of this, they would have acted differently and not recommended the Align in treating Ms. Hartzo.[2]

A review of the parties' briefs and the relevant deposition testimony reveals that there is not enough evidence to demonstrate that the treating physicians would have changed their decisions in regards to Ms. Hartzo's treatment had they received any additional warnings. Accordingly, Bard's Motion regarding the plaintiffs' failure to warn claims is **GRANTED**.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Partial Summary Judgment [ECF No. 53] is **GRANTED** in regard to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, negligence, and failure to warn. Further, Bard's Motion for Partial Summary

---

[2] The plaintiffs argue that *Moore v. Chrysler Corp.*, 596 So. 2d 225, 234 (La. Ct. App. 1992) stands for the proposition that they should be entitled to a presumption that Ms. Hartzo's physicians would have heard and heeded any additional warning that the plaintiffs allege that Bard should have given. This logic is faulty. *Moore* concerns a defective part of a mini-van, not a medical device, and is not analyzed under the learned intermediary doctrine.

Judgment on Punitive Damages [ECF No. 55] is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER: December 19, 2016

                _____
                JOSEPH R. GOODWIN
                UNITED STATES DISTRICT JUDGE